STATE of Minnesota, Petitioner,
Appellant,

v.

Charlotte NISKA, Harvey
Niska, Respondents.

No. C4–92–1478.

Supreme Court of Minnesota.

March 25, 1994.

Rehearing Denied May 4, 1994.

Hubert H. Humphrey, III, Atty. Gen., 102 State Capitol, St. Paul, and Michael O. Freeman, Hennepin County Atty., and J. Michael Richardson, Asst. County Atty., Minneapolis, for appellant.

Renee J. Bergeron and Peter W. Gorman, Asst. Public Defenders, Minneapolis, for respondents.

PAGE, Justice.

The state and the defendants, Charlotte and Harvey Niska, have sought review of portions of the decision of the court of appeals in a pre-trial appeal by the state.  The

Niskas were charged by complaint with seven offenses: (1) deprivation of custodial, parental or visitation rights under Minn.Stat. § 609.26, subd. 1(1) (Supp.1985); (2) deprivation of custodial or visitation rights under Minn.Stat. § 609.26, subd. 1(3) (Supp.1985); (3) aggravated forgery under Minn.Stat. § 609.625, subd. 3 (1986); (4) aggravated forgery under Minn.Stat. § 609.625, subd. 3 (Supp.1987); (5) kidnapping under Minn.Stat. § 609.25, subds. 1(2) and 2(1) (1984); (6) false imprisonment under Minn.Stat. § 609.255, subd. 2 (1984); and (7) aggravated forgery (uttering) under Minn.Stat. § 609.625, subd. 3 (1982). The trial court dismissed counts 2, 3, 4, 5, and 6 for lack of probable cause. In addition, the trial court ruled that the Niskas could present evidence of a Minn.Stat. § 609.26, subd. 2, affirmative defense to the jury and required that the state must prove the non-existence of that defense beyond a reasonable doubt.

On appeal to the court of appeals, the state challenged the trial court's dismissal of counts 2, 5, and 6 and its ruling that the Niskas could present evidence of a Minn. Stat. § 609.26, subd. 2, affirmative defense. The state also challenged the trial court's conclusion that once the Niskas established the defense by a preponderance of the evidence, the state was then required to prove the non-existence of the defense beyond a reasonable doubt. The court of appeals found that the trial court erred in dismissing the deprivation of custodial or visitation rights and kidnapping charges, but that it properly dismissed the false imprisonment charge. 499 N.W.2d 820. The court also found that for acts committed prior to August 1, 1988, the trial court erred in concluding that the statutory defense set out in Minn.Stat. § 609.26, subd. 2, required a reasonable belief that the Niska's actions were necessary to protect Dominique and that the Niskas were required to prove the statutory defense by a preponderance of the evidence.

Charlotte and Harvey Niska (the Niskas) are the parents of Jody Niska Twerefour (Jody Niska) and the grandparents of Dominique Niska, Jody's daughter. Dominique was born on April 5, 1981. Jody was unmarried at the time and no father was identified on the child's birth certificate. By affidavit of paternity dated March 5, 1982, Peter Karlsson stated that he was Dominique's father and, with Jody Niska's consent, his name was added to the birth certificate. At other times in 1982 and 1983 both Karlsson and Jody Niska acknowledged Karlsson's paternity. On January 28, 1983, the juvenile court, on the Niskas' petition, issued an order giving temporary legal custody to Karlsson and shared physical custody to Karlsson and the Niskas.

During the summer of 1983, Dominique's guardian ad litem alleged Karlsson physically abused and neglected Dominique. In October of 1983, reports of sexual abuse of Dominique by Karlsson were filed with the St. Louis Park and Roseau police. The allegations were not substantiated.

In 1983, after these allegations had been made, Jody Niska was given physical and legal custody of Dominique. At that time, Karlsson also received limited supervised visitation.

The state claims that Dominique and Jody disappeared in September of 1985. The Niskas claim that in October of 1985 Jody gave them physical custody of Dominique. They further claim that in 1986, with Jody Niska's consent, they and the child moved to Arizona. On February 4, 1986, the juvenile court gave Karlsson unsupervised visitation rights, but because the Niskas had moved without leaving a forwarding address, Karlsson was not able to exercise his visitation rights.

In January of 1991, authorities located Dominique and arrested the Niskas in Black Canyon, Arizona. During the time of the Niskas' and Dominique's disappearance, the Niskas are alleged on two occasions to have used a court order giving them sole legal and physical custody, to enroll Dominique in school. That court order contained the forged signature of Hennepin County District Court Judge Allen Oleisky.

Before this court the state challenges the court of appeals' interpretation of Minn.Stat. § 609.26, subd. 2, for acts committed prior to August 1, 1988. The state claims that under the statute the defendants bear the burden of proving by a preponderance of the evidence

that they reasonably believed that their actions were necessary to protect Dominique and that the statutory defense is merely a codification of the common law necessity defense. The state also raises the issue as to whether count six, the false imprisonment count, was properly dismissed by the court of appeals. For their part, the Niskas challenge the reinstatement of the kidnapping charge by the court of appeals.

We first consider the issue of the proper interpretation of the 1985 version of Minn. Stat. § 609.26. The state charged the Niskas under the statute in effect in 1985 and contends that the trial court erred in allowing the Niskas to assert "an affirmative defense" under subdivision 2 of that statute because the Niskas cannot establish any element of the common law defense of necessity.[1] The state's position that subdivision 2 codifies the common law necessity defense rests on its understanding of what the legislature intended to accomplish in amending the statute in 1988.

In 1985, the portions of subdivision 2 relevant to this case read:

No person violates subdivision 1 if the action:

(1) is taken to protect the child from physical or sexual assault or substantial emotional harm; [or]

\* \* \* \* \* \*

---

1. The state contends the Niskas must establish a *prima facie* case that the defense applies. To succeed on the necessity defense according to the state, a defendant must show: (1) that there were no legal alternatives available to prevent the harm caused; (2) that the harm to be prevented was imminent; (3) that the harm to be prevented would have significantly exceeded the harm resulting from the defendant's actions; (4) that the defendant reasonably anticipated the illegal action would avert the harm; and (5) that the defendant ceased the illegal activity at the earliest possible moment.

2. Section 1 of the amending act changed Minn. Stat. § 609.26, subd. 2. Section 2 of the act is captioned "Original Intent Clarified" and states:

To the extent that it states that Minnesota Statutes, section 609.26, subdivision 2 creates affirmative defenses to a charge under Minnesota Statutes, section 609.26, section 1 clarifies

(3) is consented to by the parent, stepparent, or legal custodian seeking prosecution.

In 1988 these portions of subdivision 2 were amended to read:

*It is an affirmative defense* if a person charged under subdivision 1 *proves* that:

(1) the person *reasonably believed the action taken was necessary* to protect the child from physical or sexual assault or substantial emotional harm; [or]

\* \* \* \* \* \*

(3) the action taken is consented to by the parent, stepparent, or legal custodian seeking prosecution, but consent to custody or specific visitation is not consent to the action of failing to return or concealing a minor child.

1988 Minn.Laws, ch. 523 (emphasis added).

The state contends that the 1988 amendment to Minn.Stat. § 609.26, subd. 2, merely clarified and did not alter the meaning of the 1985 statute. The state argues that for the Niskas to avail themselves of the defense, they must establish that they reasonably believed their actions were necessary to protect Dominique, and further, they must prove their belief was reasonable by a preponderance of the evidence. In support of its position, the state notes that section 2 of the amending act, 1988 Minn.Laws, ch. 523, is entitled "Original Intent Clarified"[2] and offers excerpts from House and Senate Committee hearings in which the amendment was discussed.[3] The state urges us to find our

the original intent of the legislature in enacting Laws 1984, chapter 484, section 2; does not change the substance of Minnesota Statutes, section 609.26; and does not modify or alter any convictions entered under that section before the effective date of section 1.

Section 3 is captioned "Effective Date" and provides:

Except as provided in section 2, section 1 is effective August 1, 1988, and applies to crimes committed on or after that date.

3. The state directed us to testimony given in legislative hearings. Unlike the state, we do not find a clear statement of the 1985 statute's intent in that testimony. For example, the witness who spoke to the House Committee on the purpose of the amendment, confused the burden of production with the burden of proof, stating "we think it's only fair that if these are statutory defenses, they [the defendants] would have the burden of going forward with the burden of proof." *See*

decision in *Nardini v. Nardini,* 414 N.W.2d 184, 196 (Minn.1987), controlling. In that case we held that an amendment to a spousal maintenance statute would be applied retroactively.

To these contentions, the Niskas respond first that the statutory defense under Minn. Stat. § 609.26, subd. 2, is not a codification of the common law defense of necessity, but rather states an exemption to the criminal prohibition and thus, the prosecution has the burden of proving the exemption does not apply and the defense has no burden of production. The Niskas' second response is that to apply the 1988 amendments to the 1985 law would violate the prohibition against *ex post facto* criminal laws, since under their interpretation of the 1985 statute, they had neither the burden of persuasion nor production.

▮ We find the state's arguments unconvincing. In *State v. Charlton,* 338 N.W.2d 26 (Minn.1983), we held that the Fourteenth Amendment prohibited shifting the burden of proof on the element of intent to a criminal defendant. *Id.* at 29. In that case we noted that defendants pleading self-defense or entrapment need only fairly raise those defenses and then the burden of disproving them beyond a reasonable doubt falls on the state. *Id.; see also State v. Grilli,* 304 Minn. 80, 96, 230 N.W.2d 445, 456 (1975). We then held that the constitution required the same allocation of burdens for the defense of duress. *Charlton,* 338 N.W.2d at 30–31. We now find the subdivision 2 defense to the crime of deprivation of parental, custodial, or visitation rights is sufficiently analogous to the defenses of self-defense, entrapment, and duress to require a similar allocation of the burdens of production and proof.[4] With all these defenses, the defendant admits an intent to do the prohibited act, but inextricably bound up with that intent is a justificatory motive. Requiring the

defendant to prove intent in such cases in effect shifts to the defendant the burden of proof on the element of intent. This the constitution will not permit.

Another reason for our rejection of the state's arguments is that we do not find our analysis in *Nardini* controlling. To begin with, *Nardini* dealt with a civil, not a criminal statute. In *Nardini* we found an amendment concerning spousal maintenance in a marital dissolution proceeding to have a retroactive effect. *Nardini,* 414 N.W.2d 184, 196 (Minn.1987). That amendment simply spelled out a preference for permanent maintenance awards, a preference the earlier statute was silent on. In *Nardini,* it was appropriate to apply the amendment retroactively for a number of reasons: first, because the amendment did not alter the substance of the statute but only clarified its meaning, it did not change the definition of maintenance nor how it was to be determined; second, because the amendment made no changes to the wording of the existing statute, it simply added interpretative language to the statute; third, because the legislative history of the amendment substantiated the legislature's intent to clarify the statute; and fourth, because the legislature manifested its intent by titling the amending act "An act * * * clarifying factors to consider."

▮ In this case, the language of subdivision 2 of the 1985 statute has a clear meaning. The 1988 amendment to subdivision 2 *does not interpret* subdivision 2, it substantially changes the language and the meaning of that subdivision. Nor in this case was the legislative history of the amendment helpful. Although the legislature did insert the word "clarifying" into the title of the amending act, that fact alone is not sufficient to justify retroactive application. Whether the legislature intended it or not, subdivision 2 of the 1985 statute *reads as a part of the definition* of the crime. It begins "[n]o person violates

Appendix to State's Brief at 16–17. *See also id.* at 4–15 (state's transcript of Senate Judiciary Committee meeting (March 1, 1988)).

4. The state contends that the crime of depriving a parent or another of custodial, parental, or visitation rights is similar to the defenses of intoxication and insanity. A defendant advancing

either of those defenses is required to prove the defense by a preponderance of the evidence. Both the defenses of intoxication and insanity involve establishing a mental state distinct from the mens rea of the offense. The statutory defense to the crime of depriving a parent or another of custodial, parental, or visitation rights does not. Therefore, we reject the state's argument.

subdivision 1 if * * *." The state asks us to reject the plain meaning of the statute in favor of an interpretation that would expand the reach of the criminal prohibition by removing subdivision 2 from the definition of the crime that the state must prove and treating it as an exception to criminal liability which the defendant bears the burden of proving. This we will not do: "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1970) (citing *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955)).

■ In addition to placing on the defendant the burden of proving the subdivision 2 defense by a preponderance of the evidence, the state would also have us retroactively expand the area of prohibited behavior in two other ways. First, the state would import the "reasonable belief" requirement of the 1988 statute into the 1985 statute. Second, the state would import the 1988 requirement that the defendants took the child in the belief doing so was necessary to protect the child. We hold that not only do defendants charged under the 1985 version of the statute have no burden of production or persuasion, but there also is no reasonable belief or necessity requirement.

■ Beyond the reasons we have already given for not applying the 1988 amendments to Minn.Stat. § 609.26 retroactively, another distinct consideration could bar such a course—the constitutional prohibition against ex post facto laws. In *Miller v. Florida,* 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987), the Court stated: "[o]ur understanding of what is meant by *ex post facto* largely derives from the case of *Calder v. Bull,* 3 Dall. 386 [1 L.Ed. 648] (1798) * * * [where Justice Chase] summarized his understanding of what fell 'within the words and the intent of the prohibition.'" Included in Justice Chase's list and quoted in *Miller v. Florida* was: "'[e]very law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.'" *Id.* To require the Niskas to bear a

burden of proof, or to add to their burden of production the need to make a *prima facie* showing that they reasonably believed their act of taking Dominique was necessary to protect her could well result in their presenting less or different testimony at trial than what other defendants charged under the 1985 statute have been allowed to present. Therefore, applying the 1988 amendment to conduct charged under the 1985 statute would likely create *ex post facto* problems.

■ We affirm the court of appeals in holding that subdivision 2 of the 1985 statute does not codify the necessity defense, and we further hold that under subdivision 2 the state is required to disprove the defense beyond a reasonable doubt and that a defendant need only produce sufficient evidence to fairly make the statutory defense an issue in the case. Because the Niskas were charged under the 1985 version of the statute and because we do not find that the 1988 amendments to the statute were retroactive to 1985, we have no occasion to consider what the 1988 version of the statute means.

■ In their cross-appeal, the Niskas challenge the court of appeals reinstatement of the kidnapping charge under Minn.Stat. § 609.25, subd. 1(2) (1984). That statute defines a kidnapper as a person who:

[F]or any of the following purposes, confines or removes from one place to another, any person without his consent or, if he is under the age of 16 years, without the consent of his parents *or other legal custodian,* is guilty of kidnapping and may be sentenced as provided in subdivision 2:

* * * * * *

(2) To facilitate commission of any felony or flight thereafter.

(Emphasis added.) The Niskas contend that because Jody Niska consented to their taking Dominique to Arizona and because they did not take Dominique to facilitate the commission of a separate or distinct felony, they cannot be charged under the statute.

The state counters that the court of appeals was correct in that there was probable cause to believe that Karlsson was a parent and that his consent was needed to move

Dominique to Arizona. The state also contends that the Niskas moved Dominique to facilitate their commission of the felony of depriving a parent, or another, of parental or visitation rights and so their conduct falls within Minn.Stat. § 609.25, subd. 1(2).

We reverse the court of appeals and hold that the consent of Dominique's physical and legal custodian, Jody Niska, was sufficient to relieve the Niskas of any liability for kidnapping. Because we decide the Niskas did have the consent of the child's legal custodian, we do not reach the question of whether deprivation of parental or visitation rights falls within Minn.Stat. § 609.25, subd. 1(2).

■ The state challenges the court of appeals' dismissal of the false imprisonment charge. We uphold the dismissal of the charge, but for different reasons. Both parties understand false imprisonment to be a lesser included offense of kidnapping. Both parties noted in their briefs the inconsistency between dismissing the charge of false imprisonment while maintaining the charge of kidnapping. The court of appeals reasoned that false imprisonment is not a lesser included offense of kidnapping because the court understood false imprisonment to include the element of restraint while kidnapping does not. We disagree. While it is true that Minn.Stat. § 609.255 speaks of "confinement or restraint" while Minn.Stat. § 609.25 speaks of "confinement or removal," we believe any conduct that could be described as "restraint" falls within the conduct encompassed by the terms "confinement or removal." [5] *See State v. Keenan,* 289 Minn. 313, 317, 184 N.W.2d 410, 412 (Minn.1971); Minn. Stat.Ann. § 609.25 advisory committee comment (West 1987). Thus, false imprisonment is a lesser included offense of kidnapping.

■ Dismissal of the false imprisonment charge was proper for the same reason that it is proper to dismiss the kidnapping charge. Minn.Stat. § 609.255, subd. 2, defines the false imprisonment of a child under 18 years of age as intentional confinement or restraint without the child's "parent's *or legal custodian's consent.*" (Emphasis added.) At the

time the Niskas moved with Dominique to Arizona, Jody Niska had sole legal and physical custody of Dominique. Jody Niska consented to the move and, therefore, the state cannot prove a crucial element of the offense.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

---

**5.** Webster's New International Dictionary, second edition, defines *confine* as "to restrain within limits" and defines *restrain* as "to limit, confine, restrict * * *."