595 N.W.2d 200 (1999)
STATE of Minnesota, Respondent,
v.
Cynthia Renee HAGE, petitioner, Appellant.
No. C1-98-222.
Supreme Court of Minnesota.
June 3, 1999.
*202 John M. Stuart, Minnesota State Public Defender, Scott G. Swanson, Assistant State Public Defender, Minneapolis, for appellant.
Michael A. Hatch, State Attorney General, St. Paul, Lisa Nelson Borgen, Clay County Attorney, Scott G. Collins, Assistant County Attorney, Moorhead, for respondent.
Heard, considered, and decided by the court en banc.

OPINION
PAUL H. ANDERSON, Justice.
On the evening of May 26, 1997, appellant Cynthia Renee Hage was arrested for being in physical control of a motor vehicle while under the influence of alcohol in violation of Minn.Stat. § 169.121, subd. 1(a) (1998). She also was charged with two other related offenses. Hage was arrested while sitting in the driver's seat of her car, which was parked on a public road with the keys in the ignition. Hage admits to being under the influence of alcohol, but asserts that she was not guilty of the offenses charged because her actions were justified by necessity. She asserts that she was sitting in her car because it was necessary for her to seek refuge there after she fled the trailer home in which she lived with her abusive boyfriend. She further asserts that the car was parked on the public road because the driveway leading to the trailer home was inaccessible as a result of a flood.
At trial, the district court, without objection, instructed the jury on the defense of necessity, which instruction provided that Hage bore the burden of persuasion for her proffered defense. The jury found Hage guilty on all three charged offenses. On appeal to the Minnesota Court of Appeals, Hage argued for the first time that the district court had improperly instructed the jury that she bore the burden of persuasion. She asserted that the instruction was erroneous because the state should have been required to shoulder the burden of persuading the jury beyond a reasonable doubt that necessity did not justify her behavior. The court of appeals affirmed, concluding that the jury had been properly instructed. We affirm.
Appellant Cynthia Renee Hage lived with her boyfriend, Bernie Kopperud, in Kopperud's trailer home in rural Clay County, north of the city of Moorhead, Minnesota. The Red River runs behind the trailer home and, in the spring of 1997, record-level flooding affected the area such that, for 31 days, the properties belonging to Kopperud and some of his neighbors were isolated from the surrounding area by the flood waters. A gravel driveway leads from Kopperud's trailer home to County Road 93. There is some dispute about whether the driveway was passable on May 26 and thus whether on that day Hage's car had been parked on the driveway and then driven to County Road 93 or whether instead Hage's car had been parked, unmoved, on County Road 93 prior to the time of her arrest.
On May 26, Hage and Kopperud were both drinking alcohol inside the trailer home. Sometime that afternoon, the couple began to argue. During this argument, Kopperud slammed Hage's hand onto a table with force sufficient to bend her ring and draw blood. Hage testified that in the past Kopperud had been physically abusive toward her. Because she was frightened, Hage then left the trailer home to escape Kopperud until he calmed down. Upon leaving the trailer home, Hage went to her car and sat in the driver's seat.
At some point after Hage left the trailer home, Kopperud called the police and informed them that Hage was drunk and sitting in her car. Clay County Sheriff's Deputy Kathleen Cline was dispatched to *203 the scene to investigate. Hage and Kopperud were not strangers to Cline because Cline had been dispatched to the trailer home on at least one prior occasion. According to Cline, she had responded to a domestic disturbance call at the trailer home earlier that month and had found Hage in an outbuilding waiting for Kopperud's anger to subside. However, at trial, Hage denied that this incident had occurred.
When Cline arrived at the scene on May 26, Hage's car was parked on County Road 93. Cline observed as Hage, who was outside the car at that point, directed a dog into the back seat, then got into the car and sat in the driver's seat. Cline approached the car and asked Hage how she was. While making this inquiry, Cline noticed that Hage's car keys were in the ignition, but that the ignition was not turned on. She also noticed that Hage's breath smelled of alcohol, her eyes were bloodshot, and her speech was slurred.
In her police report and her trial testimony, Cline stated that Hage told her she had driven the car to County Road 93 to get away from Kopperud because he had threatened to kill her. Hage maintains that she never told Cline she had driven the car and testified that the car had been parked on County Road 93 all day. At trial, one of Hage's neighbors testified that he had observed Hage's car parked on the road at different points throughout the day. He further testified that Hage's car could not have been parked on the gravel driveway because, as a result of the flooding, the driveway was not yet passable.
Suspecting that Hage was under the influence of alcohol, Cline asked Hage to perform four field sobriety tests. Hage failed all four tests, so Cline placed her under arrest and transported her to the Clay County Jail in Moorhead. Once at the jail, Hage signed an implied consent form and submitted to a breathalyzer test, which revealed that she had a .16 blood alcohol content. Following the breathalyzer test, Hage was cited for three criminal offenses: (1) being in physical control of a motor vehicle while under the influence of alcohol in violation of Minn.Stat. § 169.121, subd. 1(a); (2) having an alcohol concentration of over .10 while in physical control of a motor vehicle in violation of Minn.Stat. § 169.121, subd. 1(d); and (3) having an alcohol concentration of over .10 within two hours of being in physical control of a motor vehicle in violation of Minn.Stat. § 169.121, subd. 1(e).
Before her trial began, Hage requested that the district court instruct the jury on "self-defense/retreat." Outside the hearing of the jury, the court stated that it would instead give an instruction on the defense of necessity if the evidence Hage presented at trial was sufficient to support that defense. The court concluded that, given the circumstances, necessity was a more appropriate defense than self-defense/retreat. The court then read a proposed instruction on necessity to both attorneys. Included in this instruction was a statement that Hage would bear the "burden of proving" necessity by a preponderance of the evidence. The court noted that Minnesota has no standard jury instruction for the defense of necessity, but that Minnesota caselaw suggests that the defense is available "in emergency situations where the peril is instant, overwhelming and leaves no alternative." Neither party objected to any part of the court's proposed instruction.
At the close of trial, the district court gave the following instruction to the jury:
Now, defendant is not guilty of any crime if defendant's actions were necessary because of an emergency situation. This defense applies only in emergency situations where the peril is instant, overwhelming and leaves no alternative but the conduct in question. The defendant has the burden of proving this defense by the greater weight of the evidence. This means that the defendant must prove that it is more likely true than not true that defendant acted out of *204 necessity because of an emergency situation.
This instruction was the same one the court had read to the attorneys before trial began. Again, neither party objected to any part of this instruction.
The jury found Hage guilty of all three charges. Hage then moved the district court for judgment of acquittal, arguing that the jury failed "to adequately consider [her] emergency circumstances at the time of the alleged offense." Specifically, Hage requested "that the court bring sanity to bear on the notion that a woman victimized by a physically abusive man must go to an outdoor toilet for refuge and cannot seek that refuge in her [car] where the doors lock and the victim has mobility to further escape if necessary." The court declined to overrule the jury's verdict, noting that several other options were available to Hage besides seeking refuge from Kopperud in the driver's seat of the car.
Hage appealed to the court of appeals, arguing for the first time that the district court erroneously instructed the jury on the proper allocation of the burden of persuasion for the defense of necessity. The court of appeals affirmed, concluding that the district court properly instructed the jury that Hage "bore the burden of proving [her proffered defense] by a preponderance of the evidence." On appeal to this court, Hage again argues that the district court's jury instructions improperly placed the burden of persuasion on her.

I.
We first note that Hage did not object to the jury instructions at trial, but raised the issue for the first time on appeal. Normally, we will not review for error an issue that was not objected to at trial. See State v. Patterson, 587 N.W.2d 45, 52 (Minn.1998). However, we have the discretion to consider an unobjected-to issue on appeal if the issue represents plain error affecting substantial rights. See State v. Griller, 583 N.W.2d 736, 740 (Minn.1998); Minn. R.Crim. P. 31.02.
The United States Supreme Court has established a three-prong test for plain error, requiring that before an appellate court reviews an unobjected-to error, there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights. If these three prongs are met, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings.
Griller, 583 N.W.2d at 740 (citation omitted). Thus, we must first decide whether the district court erred when it required Hage to shoulder the burden of persuasion for the defense of necessity when the crimes with which she was charged involved being in control of a motor vehicle while under the influence of alcohol.
It is well-settled that due process "`protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Patterson v. New York, 432 U.S. 197, 204, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (quoting In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)); see also State v. Auchampach, 540 N.W.2d 808, 816 (Minn.1995) ("Due process requires that the state prove beyond a reasonable doubt the existence of every element of the crime charged."); 1 Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law § 1.8(b), at 68-71 (1986) (discussing the state's burden to prove beyond a reasonable doubt every element of the crime charged). Due process does not permit the state to place on a defendant the burden of disproving an element of the crime with which she is charged. See Patterson, 432 U.S. at 206, 97 S.Ct. 2319; Auchampach, 540 N.W.2d at 816; 1 LaFave & Scott, Substantive Criminal Law § 1.8(b), at 68-71.
Both the Supreme Court and our court have held that once the state has met its burden of proving beyond a reasonable doubt every element of the crime *205 charged, the state may, consistent with due process, impose upon a criminal defendant the burden of proving by a preponderance of the evidence that her conduct should be excused by some mitigating circumstance or issue. See Patterson, 432 U.S. at 209, 97 S.Ct. 2319 (stating that "[i]f the State [after proving beyond a reasonable doubt every element of the crime charged] nevertheless chooses to recognize a factor that mitigates the degree of criminality or punishment, we think the State may assure itself that the fact has been established with reasonable certainty."); Auchampach, 540 N.W.2d at 816 ("The state may * * * require that a defendant bear the burden of [persuasion] with respect to a mitigating circumstance or issue." (citing Patterson, 432 U.S. at 208-15, 97 S.Ct. 2319)).
A defendant cannot, however, be required to shoulder the burden of persuasion for her proffered defense when the mitigating circumstance or issue disproves or negates an element of the crime charged. See Patterson, 432 U.S. at 206-08, 97 S.Ct. 2319; Auchampach, 540 N.W.2d at 817; 1 LaFave & Scott, Substantive Criminal Law § 1.8(b), at 68-71. Requiring a defendant to bear this burden would violate due process by impermissibly shifting to the defendant the burden of disproving the existence of an element of the crime charged. See Patterson, 432 U.S. at 206-08, 97 S.Ct. 2319; Winship, 397 U.S. at 364, 90 S.Ct. 1068; Auchampach, 540 N.W.2d at 817; 1 LaFave & Scott, Substantive Criminal Law § 1.8(b), at 68-71. Accordingly, if the mitigating circumstance or issue disproves or negates an element of the crime charged, the greatest burden a state may impose upon a defendant is that of shouldering the burden of production. In such cases, a defendant must make a prima facie showing that the proffered defense is an issue in the case, with the burden then shifting back to the state to prove beyond a reasonable doubt the lack of the defense. See Auchampach, 540 N.W.2d at 817 (citing State v. Charlton, 338 N.W.2d 26, 30-31 (Minn.1983)); 1 LaFave & Scott, Substantive Criminal Law § 1.8(b), at 68-71. Thus, whether a criminal defendant may be required to shoulder the burden of persuasion for a defense is contingent upon whether shouldering that burden requires the defendant to disprove or negate an element of the crime charged.
The rule concerning the proper allocation of the burden of persuasion for defenses is best illustrated in Charlton, where we held that the burden of persuasion for the defense of duress had been inappropriately shifted to a criminal defendant when the crime with which he was chargedaggravated robberywas a crime involving the mens rea element of specific intent or purpose.[1]Charlton, 338 N.W.2d at 30-31. We concluded that requiring the defendant to shoulder the burden of persuasion for the defense of duress when he was charged with a crime requiring a mens rea of specific intent/purpose would unconstitutionally require the defendant to negate the specific intent/purpose element of the crime of aggravated robbery. Id. at 30. In reaching our conclusion, we stated the burden had been inappropriately shifted because *206 "[proof of duress] negates the purposeful intent that the state is required to show." Id.
Our holding in Charlton, however, was not a blanket statement that a criminal defendant relying on the defense of duress bears only a burden of production no matter what the nature of the crime charged. We were careful to note that "[w]here the `evil-meaning mind' consists of knowledge alone, duress can co-exist independently with and separately from that knowledge." Id. (citing United States v. Bailey, 444 U.S. 394, 402, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980)). In fact, in Charlton, we went on to explain that in a case where a general intent, or knowledge, crime was charged, as opposed to a specific intent/purpose crime, and the defense of duress was proffered, "there [would be] no constitutional violation in requiring a defendant to prove his affirmative defense by a fair preponderance of the evidence, because the state is still required to prove each element of the crime beyond a reasonable doubt, and no element is inferred or presumed." Id. (citing Patterson, 432 U.S. at 205-06, 97 S.Ct. 2319; State v. Wahlberg, 296 N.W.2d 408, 419 (Minn.1980)).
Our holding in Charlton that the proper allocation of the burden of persuasion is tied to the elements of the crime charged has since become less clear. For example, in State v. Niska, 514 N.W.2d 260 (Minn.1994), we cited Charlton as authority for the proposition that, when raising the "justification defenses" of self-defense, entrapment, and duress, a defendant is required to make a prima facie showing of the defense, with the burden of persuasion then shifting to the state to prove beyond a reasonable doubt the lack of the defense. See id. at 264. Specifically, we stated that "[w]ith all these defenses, the defendant admits an intent to do the prohibited act, but inextricably bound up with that intent is a justificatory motive. Requiring the defendant to prove intent in such cases in effect shifts to the defendant the burden of proof on the element of intent." Id. In a footnote, we distinguished "justification defenses" from "mental state defenses," stating that the defenses of voluntary intoxication and mental illness, for which the defendant is required to shoulder the burden of persuasion, are unlike justification defenses in that mental state defenses "involve establishing a mental state distinct from the mens rea of the [crime charged]." Id. at 264 n. 4. In arguing that she should not be required to shoulder the burden of persuasion for the justification defense of necessity, Hage has relied on this apparent distinction between justification defenses and mental state defenses.
We recognize that our language in Niska may have conveyed the message that the nature of the defense, instead of the elements of the crime charged, determines the proper allocation of the burden of persuasion. However, our subsequent discussion in Auchampach of the proper allocation of the burden of persuasion reiterated the Patterson and Charlton holdings that the determination should be made by focusing on the elements of the crime charged, not on the nature of the defense proffered.[2]Auchampach, 540 N.W.2d at 816-17. We held in Auchampach that the state must shoulder the burden of proving beyond a reasonable doubt the absence of heat of passion and based this holding on our recognition (1) that the legislature had statutorily created the defense without specifically allocating the burden of persuasion,[3] and (2) that we had previously approved the use of jury instruction language *207 that placed on the state the burden of proving beyond a reasonable doubt the lack of heat of passion. Id. at 818. But we also specifically noted that it would not be inconsistent with due process to require a defendant to shoulder the burden of persuasion for that defense because absence of heat of passion is not an element of the crime of murder. Id.
The confusion about the state of the law concerning the proper allocation of the burden of persuasion was further compounded by the court of appeals' decision in State v. Brodie, 529 N.W.2d 395 (Minn.App.), rev'd on other grounds, 532 N.W.2d 557 (Minn.1995), a case which dealt specifically with the allocation of the burden of persuasion for the defense of necessity, the defense on which Hage relies. In Brodie, the court of appeals held that when the crime charged was aggravated driving under the influence, a crime with no intent requirement, a defendant relying on the defense of necessity bore only the burden of production, i.e., the burden of producing evidence sufficient to make the defense an issue in the case. Id. at 399. The court of appeals based its holding on our language in Niska that the proper allocation of the burden of persuasion depends on the type of defense proffered, rather than on the elements of the crime charged. Id. at 398. We subsequently reviewed Brodie, but did not reach the issue of the proper allocation of the burden of persuasion because we concluded that the defendant did not make a sufficient prima facie showing to receive a jury instruction on that defense. Brodie, 532 N.W.2d at 557.
In Hage's case, the crimes with which she was charged all related to being in physical control of a motor vehicle while under the influence of alcohol. The elements of being in physical control of a motor vehicle while under the influence of alcohol are: (1) being in physical control of a motor vehicle, (2) in the state of Minnesota, (3) while under the influence of alcohol. See Minn.Stat. § 169.121, subd. 1(a). The other two related crimes with which Hage was charged look to the blood alcohol concentration level, both at the time of arrest and within two hours of being in physical control of a motor vehicle. See Minn.Stat. § 169.121, subds. 1(d) and 1(e). An intent to operate the motor vehicle is not an element of the three charged offenses. State v. Starfield, 481 N.W.2d 834, 839 (Minn.1992).
As given by the district court, the jury instruction required Hage to prove by a preponderance of the evidence that she acted in an emergency situation where the peril was instant, overwhelming, and left her no alternative but to seek refuge in the driver's seat of her car. We conclude that, in requiring Hage to prove the defense of necessity by a preponderance of the evidence, the court did not require Hage to disprove or negate any element of the crimes with which she was charged. Thus, because the instruction was consistent with the requirements of due process, we hold that the district court did not err when it declined to overrule the jury's verdicts. Because we hold the court did not err, we need not address the other prongs of the plain error analysis.
Affirmed.
NOTES
[1] Crimes used to be categorized as involving specific intent or general intent. In recent years, four categories of mens rea have been delineatedpurpose, knowledge, recklessness, negligence. See United States v. Bailey, 444 U.S. 394, 404, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980); Model Penal Code § 2.02 (1974). The two categories most difficult to distinguish, and the most germane to our discussion, are purpose and knowledge. A person acts with purpose when the person "`consciously desires that result, whatever the likelihood of that result happening from [the person's] conduct.'" United States v. United States Gypsum Co., 438 U.S. 422, 445, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) (quoting Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law 196 (1972)). A person acts with knowledge when the person is aware "`that the result is practically certain to follow from [the person's] conduct, whatever [the person's] desire may be as to that result.'" Id. (quoting LaFave & Scott, Criminal Law at 196).
[2] The differences in the holdings of Charlton and Niska were alluded to in a footnote in Auchampach, but were not expressly resolved. See Auchampach, 540 N.W.2d at 816 n. 7.
[3] We note that there are constitutional limits beyond which state legislatures may not go in reallocating burdens of proof and defining elements of a crime. See Patterson, 432 U.S. at 210, 97 S.Ct. 2319; State v. Orsello, 554 N.W.2d 70, 76-77 (Minn.1996); State v. Kjeldahl, 278 N.W.2d 58, 61-62 (Minn.1979).