*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0391**

State of Minnesota,
Respondent,

vs.

Michael Marshall Johnson, a/k/a Michael Tate,
Appellant.

**Filed March 7, 2016**
**Affirmed**
**Rodenberg, Judge**

Hennepin County District Court
File No. 27-CR-13-35834

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

On appeal from his conviction of being a prohibited person in possession of a firearm, appellant Michael Marshall Johnson, n/k/a Michael Tate, challenges the

sufficiency of the evidence and argues that the prosecutor committed misconduct. We affirm.

**FACTS**

In the early morning hours of October 28, 2013, gunshots were reported in North Minneapolis. Within two to three minutes, Minneapolis Police Officers Jeff Sworski and Will Gregory arrived at the scene and saw appellant limping across the street. Appellant disobeyed the officers' commands to stop and show his hands, instead continuing toward a garbage can on the street corner. When appellant reached the garbage can, he dropped a gun into it. Officer Sworski then knocked appellant to the ground, and the officers physically restrained him.

As the officers were restraining appellant, he said he had been shot and that somebody had robbed him. Appellant told the officers that this occurred down the street. An ambulance took appellant to the hospital, where a loaded .45-caliber handgun magazine was recovered from appellant's jacket. At the scene of appellant's arrest, police recovered a .45-caliber black pistol from the garbage can.

Sergeant Stephen McCarty did follow-up investigation, interviewing appellant at the hospital after reading him his *Miranda* rights. The interview was recorded and later played in its entirety for the jury. Appellant told Sergeant McCarty that, while he was on his way to his cousin's ex-girlfriend's house from a gas station, two men approached him on the sidewalk and told him to "run [his] pockets," meaning to empty them and turn over anything of value. Appellant told Sergeant McCarty that he responded: "[I]s you practicing[?] [C]ause they empty . . . [R]ob me, I ain't got nothing." The man closest to

2

appellant then aimed a gun at appellant. According to appellant, he began trying to wrestle the gun away from the first man. During that struggle, the second man came up behind appellant and shot him in the leg. Appellant fell to the ground with the first man's gun. Appellant told Sergeant McCarty that he was then "shot . . . two more times." Appellant said that, at that point, he used the gun he wrestled from the first man to shoot in the direction of the two men. The men ran away, and appellant began walking toward his "cousin's ex-girlfriend['s] house," taking the gun with him. Sergeant McCarty asked appellant to describe the men, but appellant said he was unable to see the faces of the two men, who wore hooded sweatshirts with the hoods up. As a result, appellant was able to say little more than that one man was "probably [a] little shorter than [appellant]," and weighed around 220 pounds.

Sergeant McCarty followed up on appellant's statements about the robbery, and learned of a possible robbery at the same location, at around the same time that night. Sergeant McCarty created a photo-identification lineup that included the two suspects from that other possible robbery. Appellant was unable to identify anyone in the photographs. Sergeant McCarty also collected DNA samples from the two suspects in the other possible robbery and of appellant to test against DNA collected on the gun appellant had dropped into the garbage can. The results indicated that neither suspect's DNA sample matched the DNA on the gun, but that appellant's DNA could not be excluded as contributing to the mixture of DNA on the gun.

Appellant was charged with one count of being a prohibited person in possession of a firearm, in violation of Minn. Stat. § 624.713, subd. 1(2) (2012). Appellant

3

stipulated that he was ineligible to possess a firearm. Officer Sworski, Officer Gregory, and appellant all testified at the jury trial that appellant possessed the gun and tossed it into the garbage can. Appellant asserted the affirmative defense of necessity. The jury was instructed accordingly.

At trial, appellant's necessity defense relied exclusively on his testimony. His trial testimony was similar to what he told Sergeant McCarty in the hospital interview, with a few variations and additions. For example, there were differences concerning when appellant began shooting back at the men after he wrestled the gun away. Appellant was also inconsistent in recounting the order of the injuries he received. Appellant also never told Sergeant McCarty that the gun did not work the first time he tried to shoot it or that he reloaded the gun at the end of the attempted robbery, as he claimed at trial. During closing argument, the state emphasized these and other inconsistencies between appellant's various recitations of what happened.

The prosecutor also said during closing argument that "to accept this defense of necessity, you must buy the whole story hook, line, and sinker. You got to buy the whole thing. If you don't buy part of it, [appellant] hasn't met his burden and he's not credible." The prosecutor also noted that "[t]here is no independent evidence that corroborates [appellant's] rather fanciful tale," that appellant's statements were inconsistent concerning where he was living at the time of the incident, and that appellant did not identify the suspects in the photo-identification lineup because "if he confirms the identities of the suspects, there are people that might come and tell a different story about what happened that night."

4

The jury found appellant guilty, and the district court sentenced appellant to 60 months in prison. This appeal followed.

## D E C I S I O N

### I.    Sufficiency of the evidence

Appellant argues that the evidence is insufficient to support his conviction of being a prohibited person in possession of a firearm because his possession of the gun was a necessity. In reviewing the sufficiency of the evidence, we "review the evidence to determine whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). We assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). Inconsistencies in testimony go to witness credibility, which is an issue for the fact-finder, not the reviewing court. *State v. Pendleton*, 706 N.W.2d 500, 512 (Minn. 2005).

Appellant was convicted under Minn. Stat. § 624.713, subd. 1(2), which prohibits certain people from possessing firearms, and appellant stipulated to being ineligible to possess a firearm. Officer Sworski, Officer Gregory, and appellant all testified that appellant possessed the gun on October 28, 2013. Appellant's sufficiency-of-the-evidence argument therefore only concerns his necessity defense.

5

The necessity defense "applies only in emergency situations where the peril is instant, overwhelming, and leaves no alternative but the conduct in question." *State v. Johnson*, 289 Minn. 196, 199, 183 N.W.2d 541, 543 (1971).

> To successfully assert the defense, a criminal defendant must show that the harm that would have resulted from obeying the law would have significantly exceeded the harm actually caused by breaking the law, there was no legal alternative to breaking the law, the defendant was in danger of imminent physical harm, and there was a direct causal connection between breaking the law and preventing the harm.

*Axelberg v. Comm'r of Pub. Safety*, 831 N.W.2d 682, 685 (Minn. App. 2013), *aff'd*, 848 N.W.2d 206 (Minn. 2014).

Here, appellant's version of wrestling the gun away from one of his would-be robbers would, if believed, support a conclusion that appellant had "no legal alternative to breaking the law," "the harm to be prevented [was] imminent," and "a direct, causal connection [existed] between breaking the law and preventing the harm." *See id.* (defining the elements of the necessity defense). But whether the necessity defense applies depends on the credibility of appellant's testimony. That determination is for the jury, and not for a reviewing court. *Pendleton*, 706 N.W.2d at 512. The jury was instructed on the necessity defense, and appellant does not challenge those instructions on appeal. The jury found appellant guilty of being a prohibited person in possession of a firearm. To reach that verdict, the jury necessarily disbelieved appellant's testimony, and found it more likely than not to be untrue.

6

Our thorough review of the record reveals nothing that would warrant overturning the jury's credibility determinations. The evidence is sufficient to support appellant's conviction.

## II.     Prosecutorial misconduct

Appellant argues that the prosecutor committed misconduct during summation. "[W]e reverse only if the misconduct, when considered in light of the whole trial, impaired the [appellant's] right to a fair trial." *State v. Swanson*, 707 N.W.2d 645, 658 (Minn. 2006). Where, as here, a defendant fails to object at trial to claimed prosecutorial error or misconduct, we review under a modified plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). This two-tiered test first requires appellant to establish that the prosecution committed error that is plain in that the prosecutor's conduct contravenes caselaw, a rule, or a standard of conduct. *Id.* If appellant makes this showing, the burden shifts to the state to demonstrate that the error did not affect appellant's substantial rights. *Id.* "Plain error is considered prejudicial if there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *State v. Young*, 710 N.W.2d 272, 280 (Minn. 2006) (quotations omitted). Even where error occurs, we will reverse only when an appellant was denied a fair trial. *State v. Porter*, 526 N.W.2d 359, 365 (Minn. 1995).

We review closing arguments in their entirety when determining whether prosecutorial misconduct occurred. *State v. Vue*, 797 N.W.2d 5, 15 (Minn. 2011); *see State v. Jackson*, 714 N.W.2d 681, 694 (Minn. 2006) (quotations omitted) (noting that this court should consider "the closing argument as a whole rather than focus on

7

particular phrases or remarks that may be taken out of context or given undue prominence"). A prosecutor is allowed "considerable latitude" in closing and is not required to make a "colorless" argument. *State v. Smith*, 541 N.W.2d 584, 589 (Minn. 1996). However, "[m]isstatements of the burden of proof are highly improper and would, if demonstrated, constitute prosecutorial misconduct." *State v. Hunt*, 615 N.W.2d 294, 302 (Minn. 2000).

Appellant challenges four portions of the prosecutor's closing argument. We review each of those portions in turn, applying the modified plain-error standard.

**A. Independent corroborating evidence**

Appellant challenges the prosecutor's statement that "there is no independent evidence that corroborates [appellant's] rather fanciful tale." Appellant argues that this statement was error because it implied that appellant has the burden of producing evidence to prove his innocence.

Here, appellant's entire defense at trial amounted to his claim that he possessed the gun out of necessity. Appellant had the burden of proving the elements of necessity by a preponderance of the evidence. In that context, the prosecutor's statement was part of the state's legitimate, broader effort to argue that appellant's affirmative defense lacked merit. *See State v. MacLennan*, 702 N.W.2d 219, 236 (Minn. 2005) ("As part of the state's right to vigorously argue its case, it may specifically argue that there is no merit to the particular defense. . . ."). Specifically, because appellant's hospital interview and testimony were the only pieces of evidence supporting appellant's version of events, because other evidence was inconsistent with appellant's testimony, and because

8

appellant had the burden of proof concerning the necessity defense, the prosecutor's commentary concerning the lack of independent corroborating evidence concerning the defense of necessity was proper. The comment was not error, much less plain error.

**B. Statement concerning identification of possible robbery suspects**

Appellant argues that the prosecutor improperly attacked appellant's character with his statement: "[I]f he confirms the identities of the suspects, there are people that might come and tell a different story about what happened that night." Appellant asserts that this comment was designed to imply that appellant was a liar and to inflame the jury's passions.

A prosecutor may not make arguments that are not supported by the evidence or that are designed to inflame the jury's passions or prejudices against the defendant. *State v. Rucker*, 752 N.W.2d 538, 551 (Minn. App. 2008), *review denied* (Minn. Sept. 23, 2008). Prosecutors may present "all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom," *Smith*, 541 N.W.2d at 589, but it is "unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw." *State v. Bobo*, 770 N.W.2d 129, 142 (Minn. 2009) (quotations omitted).

Appellant frames the prosecutor's statement as commentary on appellant's "failure to call a witness." Were it so, that would be impermissible. *See State v. Mayhorn*, 720 N.W.2d 776, 787 (Minn. 2006) (explaining how such a comment prejudices a criminal defendant).

In context, the prosecutor was recounting certain pieces of evidence immediately before making the statement, including the discrepancies between appellant's statements and appellant's ultimate inability to identify the two suspects when Sergeant McCarty presented him with a photo-identification lineup. The prosecutor made no comment on appellant's decision not to call those suspects as trial witnesses. Instead, the comment was a reasonable argument concerning why appellant did not identify the two suspects in the photo-identification lineup.

We conclude that the prosecutor's statement was a reasonable inference based on the evidence. As such, it was not error. *See State v. Jones*, 753 N.W.2d 677, 691-92 (Minn. 2008) ("A prosecutor's closing argument need not be colorless, so long as it is based on the evidence or reasonable inferences from that evidence.").

## C. Statement concerning obstruction of investigation

Appellant next argues that the prosecutor improperly suggested that appellant obstructed the police's investigation by stating:

> Isn't that what [appellant is] doing in this entire case, is telling half-truths? I want you to consider that. He says he'd been living in abandoned houses. That's what he tells the officer, sends him off to Dupont Avenue as to where he gets his mail and stuff like that, occasionally goes there to take a shower. He tells you on the stand that he's living in Crystal, frequently spends time with a cousin on Aldrich Avenue and 33rd. Nowhere did he tell that to the officers. If indeed that was true when he was on the stand, he didn't tell it to the officer at the time. And why wouldn't he do that? Well, police can execute search warrants. They can go to places where people live. They can look for evidence that supports the crime. But if you don't tell them where you live, you don't give the police the information they need to be able to further investigate a crime.

10

The state's argument properly emphasized that appellant gave inconsistent statements concerning where he was living at the time of the offense. In context, where appellant's credibility was crucial, the argument was not improper.

**D. Burden of proof**

Finally, appellant argues that the prosecutor committed misconduct by stating: "[T]o accept this defense of necessity, you must buy the whole story hook, line, and sinker. You got to buy the whole thing. If you don't buy part of it, [appellant] hasn't met his burden and he's not credible." We note that appellant's initial brief framed this issue as one of a *misstatement* of appellant's burden. In his reply brief, appellant re-casts the issue as one of an improper *shifting* of the burden of persuasion to appellant. Because appellant did not raise the burden-shifting argument until his reply brief, the argument is not properly preserved. Minn. R. Civ. P. 128.02, subd. 3; s*ee State v. Thompson*, __ N.W.2d __, __, 2015 WL 9437538 at *2 n.1 (Minn. App. Dec. 28, 2015) ("Generally, issues not raised or argued in appellant's principal brief cannot be revived in a reply brief.").

On its merits, appellant's creative burden-shifting argument relies on *State v. Hage*, in which the Minnesota Supreme Court held that a criminal defendant bears the burden of production, but not persuasion, when a necessity defense negates an element of the crime. 595 N.W.2d 200, 204-07 (Minn. 1999). Appellant argued in his reply brief that the necessity defense negates the "entitled to possess" element of Minn. Stat. § 624.713, subd. 1.

Even if the burden-shifting argument were considered to have been preserved, appellant stipulated to the element in question at the district court. He agreed that he was *not* a person entitled to possess a firearm. He cannot argue on appeal that the prosecutor's comments impermissibly shifted the burden on an element to which he stipulated at trial. We therefore turn to appellant's argument that the prosecutor's statement was a misstatement of appellant's burden.

### 1. The prosecutor's statement was plain error.

Appellant's burden concerning his necessity defense did not require him to prove his innocence, but only required that he prove it to be more likely than not that he acted out of necessity. *Hage*, 595 N.W.2d at 204-05 ("[O]nce the state has met its burden of proving beyond a reasonable doubt every element of the crime charged, the state may . . . impose upon a criminal defendant the burden of proving by a preponderance of the evidence that her conduct should be excused by some mitigating circumstance or issue.").

Despite the latitude afforded a prosecutor's closing argument, the "hook, line, and sinker" statement misstates the burden of proof. The jury plainly did *not* need to believe every detail of appellant's story. The necessity defense required only that the jury find it more likely than not that appellant possessed the gun because he wrestled it away from a would-be robber. The prosecutor's statement instead suggested that the jury needed to believe every detail of appellant's story. The prosecutor's "hook, line, and sinker" comment was plainly erroneous.

## 2. *The plain error did not affect appellant's substantial rights.*

Under the modified plain-error standard, the state bears the burden of showing a lack of prejudice where the prosecutor committed plain error. *Ramey*, 721 N.W.2d at 302. We consider "the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Hohenwald*, 815 N.W.2d 823, 835 (Minn. 2012) (quotation omitted). Additionally, "a prosecutor's attempts to shift the burden of proof are often nonprejudicial and harmless where, as here, the district court clearly and thoroughly instructed the jury regarding the burden of proof." *State v. McDonough*, 631 N.W.2d 373, 389 n.2 (Minn. 2001).

The prosecutor's "hook, line, and sinker" comment was a single line in what amounted to 34 pages of closing argument and rebuttal by the prosecutor. Upon careful review of the closing argument, we conclude that the "hook, line, and sinker" comment was the only instance where the prosecutor misstated the law. Both the prosecutor and the district court correctly explained to the jury that the state had the burden of proving appellant was guilty beyond a reasonable doubt and that appellant has the burden of proving necessity by a preponderance of the evidence. And finally, appellant's trial counsel had the opportunity to rebut the misstatement, which occurred during the prosecutor's main closing argument. Appellant's trial counsel took the opportunity in closing to clarify the necessity defense and the preponderance-of-the-evidence standard.

Even though the prosecutor committed plain error with the "hook, line, and sinker" comment, we conclude that the comment did not substantially influence the jury to convict appellant.

**Affirmed.**